IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**ROBERT DALE THORTON**,  )
)
    Plaintiff,  )
)
    v.  )    2:12cv1100
)    Electronic Filing
**CAROLYN W. COLVIN,[1] ACTING**  )
**COMMISSIONER OF SOCIAL**  )
**SECURITY,**  )
)
    Defendant.  )

## MEMORANDUM OPINION

Plaintiff commenced this action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). The record was developed fully at the administrative level and the parties have filed cross motions for summary judgment. For the reasons set forth below, plaintiff's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and final judgment will be entered against plaintiff and in favor of the Commissioner.

The Commissioner's findings and conclusions leading to a determination that a claimant is not "disabled" must be supported by substantial evidence. Richardson v. Perales, 402 U.S. 389,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue. Social Security History-Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (as visited on August 13, 2013). Consequently, Acting Commissioner Colvin is now the official-capacity defendant in this action. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); FED. R. CIV. P. 25(d).

401 (1971); Stunkard v. Secretary of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988). The task of this court in reviewing the decision below is to "determine whether there is substantial evidence on the record to support the ALJ's decision." Burnett v. Commissioner of Social Security, 220 F.3d 112, 118 (3d Cir. 2000). Substantial evidence "means that such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Aphel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

As the fact finder, the administrative law judge ("ALJ") has an obligation to weight all the facts and evidence of record and may accept or reject any evidence if the ALJ explains the reasons for doing so. Plummer, 186 F.3d at 429. This includes crediting or discounting a claimant's complaints of pain and/or subjective description of the limitations caused by his or her impairments. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). And where the findings of fact leading to the decision of the Commissioner are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2000). These well-established principles preclude a reversal or remand of the Commissioner's decision here because the record contains substantial evidence to support it.

Plaintiff seeks review of the ALJ's December 15, 2010, decision denying his application for benefits pursuant to a finding that although plaintiff's ability to engage in substantial gainful activity is restricted by limitations resulting from the severe impairments of major depressive disorder, social anxiety, bilateral shoulder pain with a history of tendonitis and obesity, plaintiff retains the residual functional capacity to perform the demands of a limited range of light work that will accommodate his need for (1) a low stress work environment with few workplace

2

changes; (2) minimal concentration, use of memory skills, and independent decision making; (3) little interaction with the public and supervisors; (4) nominal physical exertion with no repetitive motions involving the upper extremities; and (5) no climbing.

A vocational expert identified the positions of photographic machine operator, light and unskilled; inserting machine operator, light and unskilled; and assembler printed products – bench, light, and unskilled as jobs that would accommodate these limitations and restrictions. The appeals council denied plaintiff's request for review and the instant action followed.

Plaintiff was 50 years of age at the time the ALJ issued his decision. He had a high school education and two years of college. He obtained an Associate Degree in Information Technology in April of 2003. Plaintiff has worked regularly throughout his adult life. Most recently he worked as a self-employed newspaper delivery person from July to September of 2008. Plaintiff had to stop this job due to the onset of right rotator cuff problems.

Plaintiff lives alone in an efficiency apartment. Prior to this, plaintiff had lived with his parents all of his life and did so until their death. Plaintiff reported that he is able to perform many activities of daily living and chores around the apartment with some limitations due to his physical and mental impairments. The included but were not limited to: washing dishes; vacuuming; dusting; doing laundry; shopping; and preparing simple meals. He also watches TV and listens to the radio; uses public transportation to attend medical appointments; and walks about a block to the library. Plaintiff had a driver's license but did not renew it for financial reasons.

Plaintiff suffers from several severe impairments, the most significant of which involve his mental health. Plaintiff suffers from a major depressive disorder and social anxiety. After reviewing plaintiff's medical record and the other evidence offered, the ALJ concluded that

plaintiff's depression and anxiety produce moderate limitations in his daily and social functioning. Plaintiff's physical impairments consist of bilateral shoulder pain with a history of tendonitis and obesity. The ALJ considered each of these mental and physical impairments individually and collectively and determined they did not render him disabled under the Act.

Plaintiff contends that the ALJ's decision was not supported by substantial evidence. His argument is twofold. First, the ALJ failed to give appropriate weight to the opinions of plaintiff's treating psychiatrist, Walter Byrd, M.D., and instead improperly gave substantial weight to Douglas Shiller, Ph.D., a non-examining state agency psychological consultant. Second, the ALJ failed to include all of plaintiff's mental limitations in the hypothetical questions posed to the vocational expert. The Commissioner contends the record contains substantial evidence to support the ALJ's decision.

The record contains substantial evidence to support the ALJ's findings and conclusions. The ALJ's decision to attribute limited weight to Dr. Byrd's opinions was well within his discretion. Similarly, the ALJ's evaluation of plaintiff's mental impairments was based on a complete assessment of the entire medical record and accurately accounted for all of plaintiff's limitations.

Plaintiff's long struggle with depression is well documented. He began seeking treatment from Chestnut Ridge Counseling Services ("Chestnut Ridge") well before his alleged disability onset date of June 1, 2008. In October 2004, plaintiff was diagnosed by Alison Sastry, M.D., of Chestnut Ridge, with Major Depressive Disorder – Moderate to Severe – without Psychotic Symptoms.

From June 3, 2008 to August 8, 2010, plaintiff sought individual therapy from Corinne McClintock, M.S., LPC, at Chestnut Ridge. Throughout their therapy sessions Ms. McClintock

4

explored a variety of topics, including plaintiff's thoughts, feelings and sleep patterns. Ms. McClintock continually noted that plaintiff denied suicidal or homicidal thoughts, had a flat affect, exhibited a low to fair mood, and displayed organized thoughts. She never indicated that plaintiff's mental impairments prevented him from working.

From March of 2009 to July of 2010, Dr. Byrd oversaw plaintiff's treatment at Chestnut Ridge. In March of 2009 Dr. Byrd examined plaintiff and diagnosed him with Major Depressive Disorder Recurrent with Elements of Treatment Resistance[2] and R/O Social Anxiety Disorder. Dr. Byrd noted plaintiff was casually dressed, slightly anxious and obviously shy. Plaintiff was struggling with a lack of motivation and sense of apprehension regarding contact with others. He denied any suicidal or homicidal thoughts, hallucinations, or feelings of hopelessness or despair. Dr. Byrd assigned plaintiff a GAF of 60.[3]

---

[2] A major depressive episode is identified by the presence of at least two weeks during which there is depressed mood or loss of interest or pleasure in nearly all activities. In addition, the individual must experience four symptoms from the following areas: (1) changes in appetite or weight, sleep, and psychomotor activity; (2) decreased energy; (3) feelings of worthlessness or guilt; (4) difficulty thinking, concentrating, or making decisions; or (5) recurrent thoughts of death, suicidal ideation plans or attempts. These symptoms must persist for most of the day, nearly every day, for two consecutive weeks or more and the entire episode must be accompanied by clinically significant distress or impairment in social, occupational, or other important areas of functioning. Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM-IV") at 349-56.

The essential features of major depressive disorder is a clinical course characterized by major depressive episodes. This diagnosis is appropriate where the condition becomes recurrent and the severity of the episodes can be measured as mild, moderate, severe without psychotic features, or severe with psychotic features. Id. at 369-70. Severity is judged to be mild, moderate, or severe based on the number of criteria symptoms, the severity of those symptoms, and the degree of functional disability and distress. Id. at 412. The presence of either delusions or hallucinations, which are typically auditory, during a episode identify a severe disorder with psychotic features. Id. at 412. Hallucinations, when present, are usually transient and not elaborate and may involve voices that berate the person for shortcomings or sins. Id.

[3] A global assessment of functioning ("GAF") score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning. The GAF scale is divided into ten ranges of functioning with a range of 1-100. A GAF rating is within a

Dr. Bryd continued to report the absence of uncontrollable symptoms, extreme highs or lows, or debilitating limitations during his ongoing treatment of plaintiff.  In April of 2009 , Dr. Byrd evaluated and describe similar or identical symptoms and behaviors to those noted above.  Plaintiff was not acutely decompensating but had irregular sleep and would worry a great deal.  He had no suicidal or homicidal thoughts.  Dr. Byrd assigned a GAF score of 60.

Dr. Byrd next evaluated plaintiff in July of 2009.  He observed no paranoid, suicidal or homicidal thoughts, or hallucinations.  Plaintiff was sleeping better and was medically stable.  Dr. Byrd assigned a GAF score of 70.[4]

In August of 2009, Dr. Byrd noted that plaintiff's struggle with depression was worse on weekends.  Plaintiff had no suicidal or homicidal thoughts or hallucinations.  He assigned a GAF score of 64.

Dr. Byrd next assessed plaintiff in March of 2010 and noted plaintiff's sleep and energy level improved slightly.  Plaintiff had not experienced any recent depression or panic attacks, nor did he report hallucinations or suicidal or homicidal thoughts.  Dr. Bryd assigned a GAF score of 67.

Dr. Byrd's treatment of plaintiff in July of 2010 produced similar observations and assessment.  Plaintiff generally was stable and exercising more, but experienced increased anxiety and irritability.  He denied any hallucinations, suicidal or homicidal thoughts, or feelings of hopelessness or despair. Dr. Byrd assigned a GAF score of 64.

---

particular decile if either the symptoms severity or the level of functioning falls within the range.  A GAF score of between 51 and 60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (i.e., few friends, conflicts with peers or co-workers)."  DSM-IV at 32-34.

[4] A GAF score of 61-70 indicates "some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships."  DSM-IV at 34.

Throughout this treatment Dr. Byrd continued to prescribe a medication regimen that was consistent with the treatment of mild to moderate depression. In March of 2009, Dr. Byrd continued plaintiff on Wellbutrin XL[5] (Bupropion HCI) at 300mg a day, and added Zoloft[6] (Sertraline HCI) at 50mg a day and Deplin (a nutritional supplement) at 7.5 mg a day. In April, Dr. Byrd increased plaintiff's Zoloft to 100mg a day and exchanged the Wellbutrin XL for Wellbutrin SR[7] at 300mg a day. No changes were made in July. In August, Dr. Byrd increased plaintiff's Zoloft dosage to 150mg a day. In November he added 20mg of BuSpar[8] a day. No changes were made in March of 2010. In July, Dr. Byrd increased plaintiff's Zoloft to 200mg a day and his BuSpar to 50mg a day.

On March 24, 2010 Dr. Byrd completed a Mental Impairment Questionnaire that indicated plaintiff was disabled. It stated that plaintiff had marked difficulties in maintaining social function and repeated episodes of deterioration or decompensation in work or work like settings, and there were numerous serious limitations in plaintiff's ability to make occupational adjustments, performance adjustments, and personal-social judgments. These determinations were reflected in a "check-the-box" type form, and Dr. Byrd provided no supporting explanations to corroborate these assessments.

---

[5] Wellbutrin XL, the brand name for bupropion hydrochloride, is an aminoketone used for the treatment of major depressive disorder. Physician's Desk Reference, Wellbutrin XL, http://www.pdr.net/drug-summary/wellbutrin-xl?druglabelid=1211&id=2118 (last visited September 24, 2013).

[6] Zoloft, the brand name for sertraline hydrochloride, is a selective serotonin reuptake inhibitor used for the treatment of major depressive disorder. Physicians' Desk Reference (57th ed. 2003) at 2675-76.

[7] Wellbutrin SR is the brand name for bupropion hydrochloride in a sustained-release form. Physicians' Desk Reference (67th ed. 2013) at 1183.

[8] BuSpar is the brand name for buspirone hydrochloride. Physicians' Desk Reference (67th ed. 2013) at 114. It is an atypical anxiolytic and is used for the management of anxiety disorders. Physician's Desk Reference, Buspirone Hydrochloride Tablets, USP (5 mg, 10 mg, 15 mg, 30 mg), http://www.pdr.net/drug-summary/buspirone-hydrochloride-tablets-usp-5-mg-10-mg-15-mg-30-mg?druglabelid=1524&id=280 (last visited September 24, 2013).

Against this backdrop plaintiff's contention that the ALJ improperly discounted Dr. Byrd's assessments and conclusions is unavailing. While it is well settled that treating physician's reports are to be accorded great weight when the opinions there-in reflect expert judgment based upon continuing observations over time, it is also well settled that the ALJ retains the discretion to assign "more or less weight [to such a report] depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429. And where the record contains additional medical evidence that contradicts or undermines a treating physician's assessment, the ALJ retains discretion to assign an appropriate level of weight to each assessment and resolve the conflicting evidence. See Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985) ("in light of this conflicting medical evidence, the administrative law judge could reasonably find the lack of clinical data, indicating active phlebitis, outweighed the testimony of Newhouse and her treating physicians.").

Prior to filling out the Mental Impairment Questionnaire, Dr. Byrd had not noted any extraordinary symptoms or behaviors that would warrant limitations of disabling severity. Nor were there any observations or conditions provided to support Dr. Byrd's conclusions on the "check-the-box" form.

Dr. Byrd's assessments were sufficiently undermined by the lack of supporting observations, treatment and other notes concerning plaintiff's mental health impairments and treatment. Dr. Byrd's own notes are uncharacteristic of disabling symptoms and limitations. He consistently reported what essentially were only mild to moderate limitations and behaviors. There were no reports of present or past episodes of decompensation or similar events. And the GAF scores reflected overall assessments that were well above an individual suffering from disabling limitations.

Moreover, the medication regimen prescribed by Dr. Byrd was indicative of impairments that were producing only mild to moderate limitations. He consistently prescribed medications utilized in the treatment of mild to moderate levels of depression and anxiety. And although Dr. Byrd did have to make periodic adjustments in plaintiff's daily dosage levels, plaintiff responded well to each adjustment.[9]

An ALJ has discretion to accord the weight he believes is appropriate to all the evidence and part ways with a treating source's opinions when there are grounds for doing so. See Newhouse, 753 F.2d at 286. Here, Dr. Byrd's Questionnaire appears to be the only piece of evidence to substantiate a claim of disability. All records of treatment, including Dr. Byrd's, are indicative of severe mental impairments, but not ones of a disabling severity. Accordingly, the ALJ did not err in declining to accord great or controlling weight to the limitations reflected in the Questionnaire.

The other medical evidence and assessments likewise supported the ALJ's treatment of Dr. Byrd's Questionnaire. State agency psychological consultant Dr. Shiller reviewed plaintiff's medical record, which included Dr. Byrd's and Ms. McClintock's notes. He noted that plaintiff suffers from a major depressive disorder. Nevertheless, he determined that plaintiff was at most moderately limited by his mental impairments. He observed that there was insufficient evidence to conclude that plaintiff suffered from any extended or repeated episodes of decompenstation. Dr. Shiller determined that plaintiff could carry out very short and simple instructions and had no restrictions regarding his basic understanding and memory. Overall, he found it appeared that

---

[9] Of course, the ability to control a limitation with medication or treatment is a factor which the ALJ may consider in assessing the severity of an impairment. Welch v. Heckler, 808 F.2d 264 (3d Cir. 1986); Mason v. Shalala, 949 F.2d 1058 (3d Cir. 1993). And it equally is well accepted that if a condition can be controlled with medication or treatment, it is not disabling under the Act. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); Reed v. Sullivan, 988 F.2d 812, 814 (8th Cir. 1993); see also 20 C.F.R. §404.1530(b).

plaintiff could meet the basic mental demands of competitive work on a sustained basis notwithstanding his limitations.

Plaintiff's primary care physician, Gina Canada, D.O., similarly observed on April 17, 2009 that plaintiff's depression was "stable." She made no other notes concerning plaintiff's depression or its relative severity.

When the record contains conflicting or inconsistent medical opinions, an ALJ is generally free to choose which opinion to credit and which opinion to reject. Brown v. Astrue, 649 F.3d 193, 196-197 (3d Cir. 2011). In doing so, however, an ALJ must explain his or her reasons for crediting one medical assessment over another. Diaz v. Commissioner of Social Security, 577 F.3d 500, 505-506 (3d Cir. 2009); Reefer v. Barnhart, 326 F.3d 376, 381-382 (3d Cir. 2003). Here, the ALJ considered the medical evidence of record and found Dr. Shiller's assessment to be more consistent with it as a whole. Given the above, the ALJ was well within his discretion to assign some weight to Dr. Shiller's assessments and discount Dr. Byrd's disabling limitations.

Finally, the ALJ's hypotheticals to the vocational expert adequately accommodated the limitations produced by plaintiff's mental impairment. The ALJ limited the vocational expert to low stress jobs that only require: the carrying out of simple instructions; the performance of simple routine repetitive tasks, involving little independent decision-making; no sustained intense concentration; working primarily with things rather than people, with no more than occasional superficial interaction with others; and no production or pace work and few, if any, workplace changes. The vocational expert also took into account a sedentary work requirement and the inability to (1) climb latters, ropes, or scaffolds; (2) do repetitive pushing or pulling with the upper extremities; and (3) do no more than occasional overhead reaching. The vocational

expert identified the jobs noted above as positions that would accommodate these mental and physical limitations.

A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony makes reference to all of the functional limitations. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). It is the ALJ's function to weigh the evidence and make credibility determinations as to the existence of such limitations. Cf. Ramirez v. Barnhart, 372 F.3d 546, 555 (3d Cir. 2004) (Where a credibly established limitation is not described, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation.). Here, the hypotheticals provided to the vocational expert were consistent with plaintiff's residual functional capacity and made reference to all his credibly established functional limitations. Therefore, there was no error.

As previously discussed, the ALJ is permitted to make assessments about and assign weight to the evidence before him, so long as the determinations are appropriately explained and supported by substantial evidence. The ALJ did so here in evaluating the medical evidence and then provided the vocational expert with the appropriate hypotheticals in line with his discretionary interpretation of the evidence. In short, the ALJ's findings leading to a determination that plaintiff was not disabled were supported by substantial evidence.

Date:  September 30, 2013

> s/David Stewart Cercone
> David Stewart Cercone
> United States District Judge

cc:    Gregory T. Kunkel, Esquire
       Christy Wiegand, AUSA

      (*Via CM/ECF Electronic Mail*)